**F I L E D**
CLERK, U.S. DISTRICT COURT

6/25/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ AH _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>JAGGU BHAGWANPURIA,<br>GURLAL SINGH,<br>　aka "Gurlal Rudiana,"<br>　aka "Gullu,"<br>SAHIBDEEP SINGH,<br>　aka "Anmol,"<br>GURDEV SINGH,<br>　aka "Jassal Chambal,"<br>AMRITPAL SINGH BAL,<br>　aka "Bal,"<br>GURINDERJIT SINGH,<br>　aka "Gurinderjit Singh Nagra,"<br>　aka "Gurinder Jeet Singh,"<br>　aka "Rajinder Singh,"<br>NITISH KAUSHAL,<br>　aka "Lala,"<br>GARINDER DEO,<br>　aka "Doctor,"<br>　aka "Rocket,"<br>　aka "Ritz Carlton,"<br>GURPREET SINGH,<br>　aka "Harman,"<br>HARSHPREET SINGH,<br>AMARBIR SINGH,<br>MANDEEP KAUR,<br>　aka "Cheema,"<br>LUIS ANGEL SALAS-PUEBLA,<br>MIGUEL ANGEL ORTIZ III,<br>　aka "Victor," | CR 2:26-cr-00418-CV<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; 18 U.S.C. § 1951(a): Attempted Interference with Commerce by Extortion; 21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances; 21 U.S.C. § 841(a)(1), (b)(1)(A): Distribution of Controlled Substances; 18 U.S.C. § 371: Conspiracy to Engage in the Business of Dealing in Firearms Without a License; 18 U.S.C. § 922(o)(1): Possession of a Machinegun; 18 U.S.C. §§ 1963, 981(a)(1)(C), 924, 21 U.S.C. § 853, 28 U.S.C. § 2461(c): Criminal Forfeiture] |

1

HARDEEP SINGH,
GURPREET SINGH, and
MAJOR SINGH,

     Defendants.

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1962(d)]

[DEFENDANTS BHAGWANPURIA, GURLAL SINGH, SAHIBDEEP SINGH, GURDEV SINGH, BAL, KAUSHAL, HARSHPREET SINGH, AMARBIR SINGH, HARDEEP SINGH, and MAJOR SINGH]

At times relevant to this Indictment:

A.    THE RACKETEERING ENTERPRISE

1.    Defendants JAGGU BHAGWANPURIA, GURLAL SINGH, also known as ("aka") "Gurlal Rudiana," and "Gullu," SAHIBDEEP SINGH, aka "Anmol," GURDEV SINGH, aka "Jassal Chambal," AMRITPAL SINGH BAL, aka "Bal," NITISH KAUSHAL, aka "Lala," HARSHPREET SINGH, AMARBIR SINGH, HARDEEP SINGH, and MAJOR SINGH, and others known and unknown to the Grand Jury, were members and associates of a criminal organization engaged in, among other things, acts involving extortion, kidnapping, and trafficking in controlled substances.  This organization, known as the Jaggu Bhagwanpuria Organized Crime Group (the "Bhagwanpuria OCG"), operated in the Central District of California and elsewhere. The Bhagwanpuria OCG, including its leadership, members, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity, which engaged in, and the activities of which affected, interstate and foreign commerce.  The Bhagwanpuria OCG constituted an ongoing

2

organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

B.    BACKGROUND OF THE BHAGWANPURIA OCG

2.    The Bhagwanpuria OCG originated in the Punjab state of India, under the leadership of its founder, defendant BHAGWANPURIA. Defendant BHAGWANPURIA was a former associate of Lawrence Bishnoi, a notorious Indian gangster and the founder of the Lawrence Bishnoi Organized Crime Group ("Bishnoi OCG").  Over time, defendant BHAGWANPURIA developed an independent network of criminal associates that eventually came to rival the Bishnoi OCG.

3.    The Bhagwanpuria OCG operated as a transnational criminal syndicate headquartered in India with members across the United States, Canada, the United Kingdom, Europe, Australia, and New Zealand.  The Bhagwanpuria OCG included over 1,000 members and associates worldwide, including over 100 members and associates in the United States.  Members and associates of the Bhagwanpuria OCG engaged in criminal activity including, but not limited to, murder, kidnapping, drug trafficking, extortion, weapons trafficking, money laundering, and human smuggling.

4.    The Bhagwanpuria OCG engaged in violent criminal activity in each country in which it operated, including the United States. The Bhagwanpuria OCG accepted murder-for-hire contracts as a source of revenue, and would also target perceived rivals with violence, including murders and kidnapping.  Perceived rivals of the Bhagwanpuria OCG included members of rival organized crime groups, members or associates of the Bhagwanpuria OCG believed to be disloyal, and individuals believed to be cooperating with law enforcement against the Bhagwanpuria OCG.  Members and associates of

the Bhagwanpuria OCG would take credit for acts of violence against rivals and law enforcement cooperators, including through social media posts, to instill fear in the public and dissuade others from resisting or otherwise challenging the enterprise.

5.    The Bhagwanpuria OCG attempted to sow distrust in law enforcement and other public institutions as a means of increasing its power and its ability to generate revenue from criminal activity. To do so, the Bhagwanpuria OCG corrupted law enforcement officers in India and partnered with corrupt government officials, including to assist in extortion schemes.  The Bhagwanpuria OCG would also provide false information to law enforcement officers in India regarding alleged crimes.  The Bhagwanpuria OCG used this false information to target perceived rivals and individuals that members or associates of the Bhagwanpuria OCG believed were cooperating with law enforcement. Members and associates of the Bhagwanpuria OCG understood that providing false information on perceived rivals to corrupt law enforcement officers in India would often trigger baseless criminal proceedings as well as extortion plots by corrupt Indian law enforcement officers against perceived rivals.

6.    The Bhagwanpuria OCG relied on drug trafficking as a significant source of revenue for the enterprise.  Defendant BHAGWANPURIA personally managed a network of lucrative drug trafficking routes in the United States through which members and associates of the Bhagwanpuria OCG would transport cocaine, methamphetamine, and other controlled substances across the United States and into Canada.  The Bhagwanpuria OCG used these drug trafficking routes to transport controlled substances owned by

members and associates of the enterprise and to transport controlled substances for other drug trafficking organizations.

7. Various U.S.-based sub-networks of the Bhagwanpuria OCG coordinated drug shipments across the United States and to the U.S.-Canada border on a weekly basis. In California, the Bhagwanpuria OCG had multiple drug transportation sub-networks, each managed by a different regional leader who reported to defendant BHAGWANPURIA. These sub-networks could include dozens of different couriers, truck drivers, and other members and associates. Each sub-network typically collected drug loads in Southern California in passenger vehicles, and then transferred the loads to long-haul semi-trucks for long-distance transportation to the eastern United States or the U.S.-Canada border. A standard transportation load typically contained 100 kilograms or more of cocaine or methamphetamine.

8. Members and associates of the Bhagwanpuria OCG stole, or "ripped," bulk quantities of cocaine from other drug trafficking organizations, including by misappropriating loads of cocaine being transported by the Bhagwanpuria OCG for other drug trafficking organizations. Members and associates of the Bhagwanpuria OCG also retaliated against individuals who stole controlled substances from the enterprise with violence, including murders and kidnappings.

9. Members and associates of the Bhagwanpuria OCG engaged in extortion in many of the countries in which the enterprise operated, including the United States. Members and associates of the Bhagwanpuria OCG obtained pattern-of-life information on extortion targets and information about family members of extortion targets, often focusing on family members located in India. Members and associates of the Bhagwanpuria OCG contacted extortion targets

through encrypted applications, threatened victims with violence, and demanded extortion payments.

10.  In certain instances, members and associates of the Bhagwanpuria OCG would use corrupt law enforcement officials in India to aid in extortion schemes.  In these extortion schemes, the corrupt law enforcement official in India would file false criminal charges against a victim or victims in India identified by the Bhagwanpuria OCG.  A member or associate of the Bhagwanpuria OCG, including in some instances the corrupt law enforcement official in India, would then contact the victim, or a close associate of the victim, to inform him or her about the pending or soon-to-be pending criminal case in India.  The Bhagwanpuria member or associate would then demand payment from the victim in exchange for the unfounded criminal case to be dropped or dismissed in India.

11.  Members and associates of the Bhagwanpuria OCG in the United States also engaged in weapons trafficking.  Through straw purchasers in Nevada, U.S.-based members and associates of the Bhagwanpuria OCG would acquire firearms, ammunition, and other weapons.  Members and associates of the Bhagwanpuria OCG would sell those weapons in the United States or smuggle the weapons to Canada to generate additional revenue for the enterprise.

12.  Defendant BHAGWANPURIA oversaw and directed the global activities of the Bhagwanpuria OCG from a jail cell in India, using contraband cellphones and other voice over internet protocol devices. Members and associates of the Bhagwanpuria OCG sent a percentage of profits obtained from murder-for-hire contracts, extortions, and drug trafficking activity back to defendant BHAGWANPURIA and other members and associates in India.

6

13.   The Bhagwanpuria OCG recruited new members primarily from vulnerable, disadvantaged populations in India.  The Bhagwanpuria OCG targeted minors for recruitment to minimize the sentencing exposure that would otherwise attach to violent criminal activity committed by members and associates of the enterprise, and to minimize the monetary cost of violence.  In certain parts of India, the Bhagwanpuria OCG paid as little as 20,000 rupees, or approximately $200, to members to commit murder on behalf of the enterprise.

14.   Recruitment coordinators for the Bhagwanpuria OCG enticed minors in India to join the enterprise by promising, among other things, money, notoriety, power, and the ability to escape India. Recruitment coordinators also attempted to identify potential new recruits who had the ability to apply for student visas or foreign work visas.  The Bhagwanpuria OCG rewarded loyal members and associates in India by sending them to operate in foreign countries, including the United States and Canada.

15.   Members and associates of the Bhagwanpuria OCG understood that it was difficult, if not impossible, to leave the organization. Bhagwanpuria OCG members and associates understood that, if they were disloyal to the enterprise, other Bhagwanpuria OCG members or associates would kill or otherwise harm them or their family members, particularly those located in India.  Bhagwanpuria OCG members and associates threatened to kill or harm, and did kill and harm, other members and associates, and family members of those members and associates, believed to be cooperating with law enforcement or otherwise perceived to be disloyal.

C.    PURPOSES OF THE ENTERPRISE

16.    The purposes of the Bhagwanpuria OCG included, but were not limited to, the following:

a.    Enriching the members and associates of the Bhagwanpuria OCG through, among other crimes, murder-for-hire contracts, the distribution of controlled substances, the trafficking of firearms, and the collection of extortion payments;

b.    Promoting and enhancing the reputation and activities of the Bhagwanpuria OCG and its members and associates;

c.    Preserving, protecting, and expanding the power of the Bhagwanpuria OCG through the use of threats, intimidation, and acts of violence, including, without limitation, murder, kidnapping, and assault; and

d.    Maintaining control and authority over territories and communities controlled by the Bhagwanpuria OCG, often through acts of violence, extortions, threats, and intimidation.

D.    MEANS AND METHODS OF THE ENTERPRISE

17.    The means and methods by which defendants BHAGWANPURIA, GURLAL SINGH, SAHIBDEEP SINGH, GURDEV SINGH, BAL, KAUSHAL, HARSHPREET SINGH, AMARBIR SINGH, HARDEEP SINGH, and MAJOR SINGH, and other members and associates of the Bhagwanpuria OCG, conducted and participated in the conduct of the affairs of the Bhagwanpuria OCG included the following:

a.    Members and associates of the Bhagwanpuria OCG committed, attempted to commit, conspired to commit, and threatened to commit acts of violence, including, without limitation, murder, kidnappings, assaults, and extortion to create a climate of fear,

promote and enhance the Bhagwanpuria OCG's reputation for violence, and expand the Bhagwanpuria OCG's criminal operations;

b.    Members and associates of the Bhagwanpuria OCG trafficked and stole controlled substances to generate income for the Bhagwanpuria OCG;

c.    Members and associates of the Bhagwanpuria OCG corrupted law enforcement officials in India, and enlisted corrupt law enforcement officials in India, to assist with criminal schemes, sow distrust for established institutions, minimize faith in law and order, and facilitate extortion schemes and other criminal activity;

d.    Members and associates of the Bhagwanpuria OCG claimed responsibility for acts of violence and other criminal activity to create a climate of fear, promote and enhance the Bhagwanpuria OCG's reputation for violence, and maximize the likelihood of victim compliance with extortion demands made by members and associates;

e.    Members and associates of the Bhagwanpuria OCG extorted and attempted to extort victims to generate revenue for the enterprise; and

f.    Members and associates of the Bhagwanpuria OCG violently retaliated against rival gang members, individuals believed to be cooperating with law enforcement or otherwise disloyal, and others who challenged the Bhagwanpuria OCG's authority or values to maintain a climate of fear, promote and enhance the Bhagwanpuria OCG's reputation for violence, and protect the Bhagwanpuria OCG's criminal operations.

E.    OBJECT OF THE RACKETEERING CONSPIRACY

18.    Beginning on a date unknown to the Grand Jury, and continuing to on or about June 25, 2026, in Los Angeles and San

9

Bernardino Counties, within the Central District of California, and elsewhere, defendants BHAGWANPURIA, GURLAL SINGH, SAHIBDEEP SINGH, GURDEV SINGH, BAL, KAUSHAL, HARSHPREET SINGH, AMARBIR SINGH, HARDEEP SINGH, and MAJOR SINGH, and others known and unknown to the Grand Jury, each being a person employed by and associated with the Bhagwanpuria OCG, an enterprise engaged in, and the activities of which affected interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Bhagwanpuria OCG through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Section 1961(1) and (5), consisting of:

    a.   multiple acts involving:

        i.   Extortion, chargeable under California Penal Code Sections 21a, 31, 182, 518, 519, 520, and 664; and

        ii.  Kidnapping, chargeable under California Penal Code Sections 207(a), 664, 182, 21a, and 31.

    b.   multiple acts indictable under Title 18, United States Code, Section 1951(a) (relating to interference with commerce by robbery and extortion); and

    c.   multiple offenses involving trafficking of controlled substances in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

19. It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

F.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

20.    The object of the conspiracy was to be accomplished, in substance, as follows:

a.    Defendant BHAGWANPURIA, the global leader of the Bhagwanpuria OCG, would direct and coordinate acts of violence committed by Bhagwanpuria OCG members and associates in the United States, Canada, and elsewhere, including, but not limited to, kidnappings, assaults, and extortion schemes.

b.    Defendants GURLAL SINGH, SAHIBDEEP SINGH, GURDEV SINGH, AMRITPAL SINGH, KAUSHAL, HARSHPREET SINGH, and AMARBIR SINGH, and others known and unknown to the Grand Jury, would carry out acts of violence on behalf of the Bhagwanpuria OCG, including, but not limited to, kidnappings and assaults.

c.    Defendants GURLAL SINGH, GURDEV SINGH, and GURINDERJIT SINGH, and others known and unknown to the Grand Jury, would carry out extortions on behalf of the Bhagwanpuria OCG.

d.    Defendant GURLAL SINGH, and others unknown to the Grand Jury, would corrupt Indian law enforcement officers and provide false information on perceived rivals of the Bhagwanpuria OCG to corrupt Indian law enforcement officers.

e.    Defendant GURLAL SINGH, and others unknown to the Grand Jury, would cause false criminal charges to issue against perceived rivals of the Bhagwanpuria OCG.

f.    Defendants GURLAL SINGH, SAHIBDEEP SINGH, and GURDEV SINGH, and others unknown to the Grand Jury, would create social media posts taking credit for acts of violence, including murder, to

enhance the Bhagwanpuria OCG's reputation for extreme violence and encourage victim compliance with extortion schemes.

g.    Defendant BHAGWANPURIA would oversee and manage transportation routes for bulk quantities of cocaine and methamphetamine being trafficked across the United States and to the U.S.-Canada border.

h.    Defendant BAL, and others unknown to the Grand Jury, would manage networks of long-haul semi-truck drivers and local couriers transporting bulk quantities of cocaine and methamphetamine along transportation routes controlled by the Bhagwanpuria OCG.

i.    Defendant BAL and others known and unknown to the Grand Jury would direct the activities of Bhagwanpuria OCG members and associates receiving, storing, transporting, and/or delivering bulk quantities of cocaine and methamphetamine along transportation routes controlled by the Bhagwanpuria OCG.

j.    Defendants SAHIBDEEP SINGH and HARDEEP SINGH, and others known and unknown to the Grand Jury, would collect, transport, and/or deliver bulk quantities of cocaine and methamphetamine.

k.    Defendant BAL would sell bulk quantities of cocaine to generate revenue for the Bhagwanpuria OCG.

l.    Defendants GURLAL SINGH, SAHIBDEEP SINGH, and MAJOR SINGH would sell firearms to generate revenue for the Bhagwanpuria OCG.

G.    OVERT ACTS

21.    In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants BHAGWANPURIA, GURLAL SINGH, SAHIBDEEP SINGH, GURDEV SINGH, BAL, KAUSHAL, HARSHPREET SINGH, AMARBIR SINGH, HARDEEP SINGH, and MAJOR SINGH, and others

known and unknown to the Grand Jury, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

<u>DEFENDANT BAL DISTRIBUTES FIVE KILOGRAMS OF COCAINE</u>

<u>REPRESENTED TO BE STOLEN</u>

<u>Overt Act No. 1</u>:   On June 17, 2024, Co-Conspirator 1 negotiated the sale of five kilograms of cocaine that Co-Conspirator 1 represented had been stolen by defendant BAL to an individual who Co-Conspirator 1 and other members and associates of the Bhagwanpuria OCG believed was a criminal associate, but who in fact was a confidential informant working with law enforcement ("CI-1").

<u>Overt Act No. 2</u>:   On June 26, 2024, Gurpreet Singh, at the direction of defendant BAL, sold approximately 5.02 kilograms of a mixture and substance containing a detectable amount of cocaine to CI-1 for $45,000.

<u>Overt Act No. 3</u>:   On June 26, 2024, Gurpreet Singh collected and transported $45,000 in drug proceeds.

<u>DEFENDANTS BAL, KAUSHAL, HARSHPREET SINGH, AND AMARBIR SINGH</u>

<u>KIDNAP VICTIM 1 AS RETRIBUTION FOR A STOLEN DRUG LOAD</u>

<u>Overt Act No. 4</u>:   On July 10, 2024, Co-Conspirator 1, an associate of the Bhagwanpuria OCG, used a cellphone to communicate with an individual believed to have stolen a drug load from defendant BAL and the Bhagwanpuria OCG in an effort to lure that individual to a residence in Manteca, California.

<u>Overt Act No. 5</u>:   On July 10, 2024, defendants BAL, KAUSHAL, HARSHPREET SINGH, and AMARBIR SINGH restrained Victim 1 at defendant BAL's direction at a residence in Manteca, California.

Overt Act No. 6:    On July 10, 2024, defendants KAUSHAL and HARSHPREET SINGH, and others unknown to the Grand Jury, assaulted Victim 1.

Overt Act No. 7:    On July 10, 2024, defendants BAL, KAUSHAL, and AMARBIR SINGH, and others known and unknown to the Grand Jury, transported Victim 1 from Manteca, California to an apartment in Fresno, California, as depicted in the image below:



Overt Act No. 8:    On July 10, 2024, defendant BAL, and others unknown to the Grand Jury, demanded that Victim 1 pay $50,000 for a Bhagwanpuria OCG drug load that defendant BAL claimed had been stolen from him.

Overt Act No. 9:    On July 10, 2024, defendant BHAGWANPURIA directed defendant BAL, and others unknown to the Grand Jury, to release Victim 1 in an effort to resolve an internal dispute within the Bhagwanpuria OCG.

//

//

14

DEFENDANTS SAHIBDEEP SINGH AND HARDEEP SINGH ASSIST WITH TRANSPORTING BULK COCAINE AND HEROIN ACROSS THE UNITED STATES

Overt Act No. 10:   On May 22, 2025, Mandeep Kaur agreed to transport approximately 80 to 100 kilograms of cocaine from Los Angeles, California to Indianapolis, Indiana at a price of $500 per kilogram.

Overt Act No. 11:   On June 1, 2025, Gurpreet "Harman" Singh agreed to assist in coordinating the storage and transportation of approximately 100 kilograms of cocaine in the Los Angeles area.

Overt Act No. 12:   On June 1, 2025, Gurpreet "Harman" Singh enlisted defendant SAHIBDEEP SINGH to receive, store, and transport approximately 100 kilograms of cocaine in the Los Angeles area.

Overt Act No. 13:   On June 1, 2025, defendant SAHIBDEEP SINGH received approximately 99.2 kilograms of a mixture and substance containing a detectable amount of cocaine, and approximately one kilogram of heroin, in a parking lot in Pomona, California from a different drug trafficking organization.

Overt Act No. 14:   On June 3, 2025, defendants SAHIBDEEP SINGH and HARDEEP SINGH delivered approximately 99.2 kilograms of a mixture and substance containing a detectable amount of cocaine, and approximately one kilogram of heroin, to Mandeep Kaur in Barstow, California.

Overt Act No. 15:   Between June 3, 2025 and June 5, 2025, Mandeep Kaur transported approximately 99.2 kilograms of a mixture and substance containing a detectable amount of cocaine, and approximately one kilogram of heroin, in a long-haul semi-truck from Barstow, California to Greenfield, Indiana.

Overt Act No. 16:   On June 4, 2025, Gurpreet "Harman" Singh agreed to assist in coordinating the transportation of approximately 100 kilograms of cocaine from Indianapolis to New Jersey.

Overt Act No. 17:   On June 4, 2026, Gurpreet "Harman" Singh enlisted Co-Conspirator 2 to transport approximately 100 kilograms of cocaine from Indianapolis to New Jersey.

Overt Act No. 18:   On June 5, 2025, Mandeep Kaur delivered approximately 99.2 kilograms of a mixture and substance containing a detectable amount of cocaine, and approximately one kilogram of heroin, to Co-Conspirator 2 in Greenfield, Indiana.

Overt Act No. 19:   On June 7, 2025, Co-Conspirator 2 delivered approximately 99.2 kilograms of a mixture and substance containing a detectable amount of cocaine, and approximately one kilogram of heroin, to a member or associate of a different drug trafficking organization, which cocaine was subsequently seized and is depicted in the image below:



Overt Act No. 20:   On June 7, 2025, Co-Conspirator 2 accepted $15,000 in payment for himself, defendant SAHIBDEEP SINGH, and

Gurpreet "Harman" Singh for their respective roles in transporting the cocaine and heroin load across the country.

<u>DEFENDANTS GURLAL SINGH, SAHIBDEEP SINGH, AND MAJOR SINGH SELL SEMI-</u>

AUTOMATIC RIFLES, A MACHINE GUN, AND PISTOLS

<u>Overt Act No. 21</u>:    On July 11, 2025, defendant SAHIBDEEP SINGH offered to sell CI-1 weapons, including AK-47s and grenades.

<u>Overt Act No. 22</u>:    On September 4, 2025, in a parking lot in Fontana, California, defendants GURLAL SINGH and SAHIBDEEP SINGH sold CI-1 (i) a CANiK, model TP9SA, 9mm Luger caliber pistol, bearing serial number 21AP 20710, (ii) a Polymer80, model PF940V2, 9mm Luger caliber pistol, bearing no serial number (commonly referred to as a "ghost gun"), (iii) one machine gun conversion device, (iv) two pistol magazines, and (v) 16 rounds of Winchester 9mm ball ammunition for a total price of $2,000.

<u>Overt Act No. 23</u>:    On September 18, 2025, in a parking lot in Santa Clarita, California, defendants GURLAL SINGH and SAHIBDEEP SINGH sold CI-1 (i) a Noveske Rifleworks, model N4, 6.8mm Remington SPC caliber semi-automatic rifle, bearing serial number C-1452, (ii) a Palmetto State Armory, model PA-10, .308 Winchester caliber semi-automatic rifle, bearing serial number PF 061513, (iii) five rounds of Winchester .308 caliber ammunition, (iv) 11 rounds of Remington 6.6 caliber ammunition, (v) one round of Federal Cartridge Company 6.8 caliber ammunition, (vi) three rounds of Red Army 7.62x39 caliber ammunition, (vii) five rounds of Tulammo 7.62x39 caliber ammunition,

//

//

//

(viii) two rounds of Hornaday 6.8 caliber ammunition, and (ix) a tactical gun case containing assorted gun parts and magazines, as pictured below, for a total price of $4,000.

Overt Act No. 24:    On October 7, 2025, in a parking lot in Bakersfield, California, defendants GURLAL SINGH and MAJOR SINGH sold CI-1 a privately manufactured, unknown model, 5.56x45mm caliber

//

//

//

18

short-barreled semi-automatic ghost gun rifle, and 30 rounds of LC .223 caliber ammunition, as pictured below, for a total price of $1,000.



Overt Act No. 25:    On December 3, 2025, in a parking lot in Stevenson Ranch, California, defendants GURLAL SINGH and SAHIBDEEP SINGH sold CI-1 a privately manufactured, unknown model, 5.56x45mm caliber short-barreled semi-automatic ghost gun rifle; a Glock, model 19X, 9mm Luger caliber pistol, bearing serial number BXYY285; a Sig Sauer, model P250, 9mm S&W caliber pistol, bearing serial number

//

//

//

57C002841; and a Taurus, model G3, 9mm Luger caliber pistol, with an obliterated serial number, as pictured below, for a total price of $10,000.



DEFENDANTS BHAGWANPURIA AND SAHIBDEEP SINGH AGREE TO TRANSPORT, AND SUBSEQUENTLY COORDINATE THE TRANSPORTATION OF, A LOAD OF SHAM COCAINE

Overt Act No. 26:   On February 16, 2026, defendant BHAGWANPURIA agreed to coordinate the collection of approximately 20 kilograms of cocaine from CI-1 and the placement of that cocaine aboard a vehicle transporting approximately 163 kilograms of cocaine from Los Angeles to Vancouver, Canada for a price of $1,600 per kilogram.

Overt Act No. 27:   On February 16, 2026, defendant BHAGWANPURIA sent CI-1 the telephone number of a drug coordinator and a serial number of a bill of currency so that CI-1 could coordinate the delivery of 20 kilograms of cocaine to a member or associate of the Bhagwanpuria OCG for transportation from Los Angeles to Vancouver.

Overt Act No. 28:   On February 18, 2026, Co-Conspirator 3 accepted, on behalf of the Bhagwanpuria OCG, what defendant BHAGWANPURIA and other members and associates of the Bhagwanpuria OCG

believed was approximately 20 kilograms of a mixture and substance containing a detectable amount of cocaine, but which in fact was a sham load of cocaine (the "sham cocaine load").

Overt Act No. 29:   On February 20, 2026, defendant SAHIBDEEP SINGH communicated to CI-1, in Punjabi, "boss told me that load will reach day after tomorrow."

Overt Act No. 30:   On February 21, 2026, Co-Conspirator 4 and Co-Conspirator 5 transported the sham cocaine load north on Highway 99 in San Joaquin County, California on behalf of the Bhagwanpuria OCG.

Overt Act No. 31:   On February 23, 2026, after law enforcement seized the sham cocaine load, defendant BHAGWANPURIA provided an update to CI-1, in Punjabi, that the "whole load got caught," and accused CI-1 that a "tracker was in your bricks sisterfucker you fucked up everything."

DEFENDANTS GURLAL SINGH AND GURDEV SINGH CLAIM RESPONSIBILITY
FOR THE MURDER OF B.S. IN INDIA ON INSTAGRAM

Overt Act No. 32:   On January 15, 2026, defendants GURLAL SINGH, SAHIBDEEP SINGH, and GURDEV SINGH planned, on a phone call, an Instagram post that would claim responsibility for the January 15, 2026 murder of victim B.S. in Miani, India.

DEFENDANT GURLAL SINGH SENDS VICTIM 2 A SCREENSHOT OF THE INSTAGRAM
POST CLAIMING RESPONSIBILITY FOR THE MURDER OF B.S.

Overt Act No. 33:   On January 16, 2026, defendant GURLAL SINGH sent Victim 1, who had a familial connection to B.S., a screenshot of the Instagram post planned by defendants GURLAL SINGH, SAHIBDEEP SINGH, and GURDEV SINGH on January 15, 2026, in which "Jashal Chambal," an alias of defendant GURDEV SINGH, claimed responsibility

on behalf of himself and "Gurlal Rudiana," an alias of defendant GURLAL SINGH, for the murder of victim B.S., as depicted in the image and translation below:

DEFENDANT GURLAL SINGH INDUCES A CORRUPT INDIAN OFFICIAL TO FALSELY ACCUSE VICTIM 2, VICTIM 2's FATHER, AND VICTIM 2's SISTER OF CONSPIRING TO MURDER B.S., AND SUBSEQUENTLY EXTORT THE VICTIMS

Overt Act No. 34:   No later than April 13, 2026, defendant GURLAL SINGH provided Victim 2's name and information to Gurinderjit Singh, a corrupt law enforcement officer in the Punjab state of India, for purposes of falsely accusing Victim 2 of murder.

Overt Act No. 35:   On April 13, 2026, Gurinderjit Singh contacted Victim 2's father, Victim 3, and told Victim 3 that, after conferring with defendant GURLAL SINGH, Gurinderjit Singh would be criminally charging Victim 3 for the murder of B.S.

Overt Act No. 36:   On April 16, 2026, Gurinderjit Singh communicated to Victim 2 that, unless Victim 2 or Victim 3 paid Gurinderjit Singh, Victim 2, Victim 3, and Victim 2's sister, Victim 4, would be "in the case" for the murder of B.S.

22

Overt Act No. 37:   On May 24, 2026, Gurinderjit Singh participated in a press conference in Punjab, India at which Indian law enforcement accused Victim 2 and Victim 3, in Punjabi, of giving "a contract to have [B.S.] murdered," and stated that Victim 2, Victim 3, and Victim 4 would be "formally nominated" as "accused" in the murder of B.S.

Overt Act No. 38:   On May 25, 2026, following the press conference, Gurinderjit Singh communicated to Victim 3, in Punjabi, that "Gurlal" is "with me," and that defendant GURLAL SINGH told Gurinderjit Singh that "they didn't pay us the whole amount what was agreed upon."

Overt Act No. 39:   On May 25, 2026, Gurinderjit Singh communicated to Victim 3 Gurinderjit Singh would remove two of the three individuals falsely implicated in the murder of B.S. (i.e., Victim 2, Victim 3, and/or Victim 4) upon receipt of a payment.

DEFENDANT GURDEV SINGH ATTEMPTS TO EXTORT A BUSINESS OWNER IN OHIO

Overt Act No. 40:   On May 24, 2026, defendant GURDEV SINGH, while in the custody of U.S. Immigration and Customs Enforcement, contacted Victim 5, a business owner in Ohio, and, in a voice message in Punjabi, stated that his "group needs money," specifically "15 lakhs rupees," and that they were willing to "take [the money] by brutal force."

Overt Act No. 41:   On May 28, 2026, defendant GURDEV SINGH, while in the custody of U.S. Immigration and Customs Enforcement, contacted Victim 5 and, in a voice message in Punjabi, stated the following: "I will tell you this much now, I gave you today's time, you don't listen to me. Now, you listen to me with your ears wide open. I will kill you by making you run on the road, right. I'm going

23

to put the bullets in your kids too, alright. Save your family, alright. Now, listen to me, my group had asked for money and now many groups are going to ask. I will tell everyone to fuck you. Now my brother, stay strong, alright. Money, now we will extort it from you, it's not 15 lakhs now, it's 50 lakhs, alright. We negotiated 15 lakhs with you and now we will extort 50 lakhs from you."

Overt Act No. 42:   On June 11, 2026, defendant GURDEV SINGH or a co-conspirator sent Victim 5 a WhatsApp message containing a photograph of Victim 5's residence.

COUNT TWO

[18 U.S.C. § 1951(a)]

[DEFENDANT GURINDERJEET SINGH]

22. Between on or about April 13, 2026 and June 5, 2026, in Los Angeles County, within the Central District of California, and elsewhere, defendant GURINDERJIT SINGH, also known as "Gurinderjit Singh Nagra," "Gurinder Jeet Singh," and "Rajinder Singh," knowingly and with the intent to obtain property, attempted to obstruct, delay, and affect foreign commerce and the movement of articles in commerce by extortion, in that defendant GURINDERJEET SINGH attempted to obtain property, consisting of money from Victim 2 and Victim 3, with Victim 2's and 3's consent induced by the wrongful use of threatened force, violence, and fear.

COUNT THREE

[21 U.S.C. § 846]

[DEFENDANTS SAHIBDEEP SINGH, DEO, GURPREET "HARMAN" SINGH, KAUR, SALAS-PUEBLA, ORTIZ, and HARDEEP SINGH]

H.    OBJECTS OF THE CONSPIRACY

23.    Beginning on a date unknown to the Grand Jury, and continuing until on or about June 25, 2026, in Los Angeles and San Bernadino Counties, within the Central District of California, and elsewhere, defendants SAHIBDEEP SINGH, also known as ("aka"), "Anmol," GARINDER DEO, aka "Doctor," "Rocket," and "Ritz Carlton," GURPREET SINGH, aka "Harman" (GURPREET "HARMAN" SINGH), MANDEEP KAUR, aka "Cheema," LUIS ANGEL SALAS-PUEBLA, MIGUEL ANGEL ORTIZ III, aka "Victor," and HARDEEP SINGH, and others known and unknown to the Grand Jury, conspired with each other to knowingly and intentionally distribute and possess with intent to distribute the following controlled substances:

(1)    at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(ii)(II); and

(2)    at least one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(i).

I.    MANNER AND MEANS OF THE CONSPIRACY

24.    The objects of the conspiracy were to be accomplished, in substance, as follows:

26

a.    Defendant DEO would purchase bulk quantities of cocaine, heroin, and other controlled substances from Mexico-based sources of supply for distribution to clients in Canada and the eastern United States.

b.    Defendant DEO would contract with other drug trafficking organizations to transport bulk quantities of cocaine, heroin, and other controlled substances from the Central District of California to the U.S.-Canada border and the eastern United States.

c.    Defendant SALAS-PUEBLA would deliver bulk quantities of cocaine and heroin on behalf of Mexico-based drug trafficking organizations supplying bulk quantities of controlled substances to other drug trafficking organizations, including defendant DEO's drug trafficking organization.

d.    Defendant GURPREET "HARMAN" SINGH would coordinate logistics for receiving, storing, transporting, and delivering bulk quantities of cocaine and heroin.

e.    Defendants SAHIBDEEP SINGH and HARDEEP SINGH would collect, store, transport, and deliver bulk quantities of cocaine and heroin.

f.    Defendant KAUR would transport bulk quantities of cocaine and heroin across the United States in a long-haul semi-truck.

g.    Defendant ORTIZ would receive bulk quantities of cocaine and heroin in the eastern United States on behalf of a drug trafficking organization purchasing controlled substances from defendant DEO.

J.    OVERT ACTS

25.    In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants SAHIBDEEP SINGH, DEO, GURPREET "HARMAN" SINGH, KAUR, SALAS-PUEBLA, ORTIZ, and HARDEEP SINGH, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:    No later than January 20, 2025, defendant DEO provided his contact information to a person defendant DEO and other co-conspirators believed was a criminal associate but who was, in fact, a confidential informant working with law enforcement ("CI-1") for purposes of assisting with the purchase and transportation of bulk quantities of controlled substances in the Los Angeles area.

Overt Act No. 2:    On May 29, 2025, defendant DEO contacted CI-1 and requested assistance with transporting a bulk quantity of cocaine from the Los Angeles area to the eastern United States.

Overt Act No. 3:    On June 1, 2025, defendant DEO provided a telephone number and serial number for a dollar bill received by defendant DEO from CI-1 to a representative for the drug trafficking organization supplying defendant DEO with bulk quantities of cocaine for purposes of collecting and transporting that cocaine.

Overt Act No. 4:    On May 22, 2025, defendant KAUR agreed to transport approximately 80 to 100 kilograms of cocaine from Los Angeles, California to Indianapolis, Indiana at a price of $500 per kilogram.

Overt Act No. 5:    On June 1, 2025, defendant GURPREET "HARMAN" SINGH agreed to assist in coordinating the storage and transportation

28

of approximately 100 kilograms of cocaine in the greater Los Angeles area.

Overt Act No. 6:   On June 1, 2025, defendant GURPREET "HARMAN" SINGH enlisted defendant SAHIBDEEP SINGH to receive, store, and transport approximately 100 kilograms of cocaine in the greater Los Angeles area.

Overt Act No. 7:   On June 1, 2025, defendant SALAS-PUEBLAS delivered to defendant SAHIBDEEP SINGH approximately 99.2 kilograms of a mixture and substance containing a detectable amount of cocaine, and approximately one kilogram of heroin, in a parking lot in Pomona, California.

Overt Act No. 8:   On June 3, 2025, defendants SAHIBDEEP SINGH and HARDEEP SINGH delivered approximately 99.2 kilograms of a mixture and substance containing a detectable amount of cocaine, and approximately one kilogram of heroin, to defendant KAUR in Barstow, California.

Overt Act No. 9:   Between June 3, 2025 and June 5, 2025, defendant KAUR transported approximately 99.2 kilograms of a mixture and substance containing a detectable amount of cocaine, and approximately one kilogram of heroin, in a long-haul semi-truck from Barstow, California to Greenfield, Indiana.

Overt Act No. 10:   On June 4, 2025, defendant GURPREET "HARMAN" SINGH agreed to assist in coordinating the transportation of approximately 100 kilograms of cocaine from Indianapolis to New Jersey.

Overt Act No. 11:   On June 4, 2026, defendant GURPREET "HARMAN" SINGH enlisted Co-Conspirator 2 to transport approximately 100 kilograms of cocaine from Indianapolis to New Jersey.

Overt Act No. 12:    On June 5, 2025, defendant KAUR delivered approximately 99.2 kilograms of a mixture and substance containing a detectable amount of cocaine, and approximately one kilogram of heroin, to Co-Conspirator 2 in Greenfield, Indiana.

Overt Act No. 13:    On June 6, 2025, defendant DEO instructed CI-1 that, moving forward, he wanted to "keep it busy" and work with an organization that was moving or otherwise supplying "200" kilograms of cocaine "a week."

Overt Act No. 14:    On June 7, 2025, defendant ORTIZ received approximately 99.2 kilograms of a mixture and substance containing a detectable amount of cocaine, and approximately one kilogram of heroin, from Co-Conspirator 2 in a parking lot in Clinton, New Jersey.

Overt Act No. 15:    On June 7, 2025, Co-Conspirator 2 accepted $15,000 in payment for himself and defendants GURPREET "HARMAN" SINGH and SAHIBDEEP SINGH for their respective roles in transporting the cocaine and heroin load across the country.

Overt Act No. 16:    On June 7, 2025, shortly after law enforcement seized the approximately 99.2 kilograms of a mixture and substance containing a detectable amount of cocaine and approximately one kilogram of heroin, defendant DEO messaged CI-1 "bro what happen they saying the guys got pinched."

Overt Act No. 17:    On June 7, 2025, shortly after law enforcement seized the approximately 99.2 kilograms of a mixture and substance containing a detectable amount of cocaine and approximately one kilogram of heroin, defendant DEO sent CI-1 a screenshot of a message defendant DEO received stating "the work and Victor at the police station bro," and then messaged CI-1 "shit bro not good."

30

COUNT FOUR

[21 U.S.C. § 846]

[DEFENDANTS BAL and GURPREET SINGH]

A.    OBJECT OF THE CONSPIRACY

26.    Beginning on a date unknown to the Grand Jury, and continuing until on or about August 28, 2024, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendants AMRITPAL SINGH BAL, aka "Bal," and GURPREET SINGH, and others known and unknown to the Grand Jury, conspired with each other to knowingly and intentionally distribute and possess with intent to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(ii)(II).

B.    MANNER AND MEANS OF THE CONSPIRACY

27.    The object of the conspiracy was to be accomplished, in substance, as follows:

a.    Defendant BAL would obtain bulk quantities of cocaine, including by stealing cocaine from other drug trafficking organizations.

b.    Defendant BAL and Co-Conspirator 1 would negotiate the quantity of, and sale prices for, cocaine with potential drug customers.

c.    Defendant GURPREET SINGH, and others unknown to the Grand Jury, would transport cocaine on the date arranged by defendant BAL.

d.    Defendant GURPREET SINGH, and others unknown to the Grand Jury, would deliver cocaine to drug customers.

31

e.    Defendant GURPREET SINGH would collect and transport drug proceeds derived from the sale of cocaine.

C.    OVERT ACTS

28.    In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendants BAL and GURPREET SINGH, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:    On June 17, 2024, Co-Conspirator 1 negotiated the sale of five kilograms of cocaine that Co-Conspirator 1 represented had been stolen by defendant BAL to an individual who Co-Conspirator 1, defendants BAL and GURPREET SINGH, and other co-conspirators believed was a criminal associate, but who in fact was a confidential informant working with law enforcement ("CI-1").

Overt Act No. 2:    On June 26, 2024, defendant GURPREET SINGH, at the direction of defendant BAL, sold approximately 5.02 kilograms of a mixture and substance containing a detectable amount of cocaine to CI-1 for $45,000.

Overt Act No. 3:    On June 26, 2024, defendant GURPREET SINGH collected and transported $45,000 in drug proceeds.

COUNT FIVE

[21 U.S.C. § 841(a)(1), (b)(1)(A)(ii)(II)]

[DEFENDANT GURPREET SINGH]

29.  On or about June 26, 2024, in Los Angeles County, within the Central District of California, defendant GURPREET SINGH knowingly and intentionally distributed at least five kilograms, that is, approximately 5.02 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT SIX

[18 U.S.C. § 371]

[DEFENDANTS GURLAL SINGH, SAHIBDEEP SINGH, and MAJOR SINGH]

A.    INTRODUCTORY ALLEGATION

30.   At times relevant to this Indictment, defendants GURLAL SINGH, also known as ("aka"), "Gurlal Rudiana" and "Gullu," SAHIBDEEP SINGH, aka "Anmol," and MAJOR SINGH did not have a federal firearms license issued by the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and thus were not licensed to import, manufacture, or deal in firearms.

B.    OBJECT OF THE CONSPRIACY

31.   Beginning on a date unknown to the Grand Jury, and continuing until on or about June 25, 2026, in Los Angeles and San Bernadino Counties, within the Central District of California, and elsewhere, defendants GURLAL SINGH, SAHIBDEEP SINGH, and MAJOR SINGH conspired with others known and unknown to the Grand Jury to knowingly and intentionally engage in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A).

C.    MANNER AND MEANS OF THE CONSPIRACY

32.   The object of the conspiracy was to be accomplished, in substance, as follows:

a.    Defendants GURLAL SINGH and SAHIBDEEP SINGH would offer to sell firearms.

b.    Defendants GURLAL SINGH and SAHIBDEEP SINGH would provide photographs of firearms for sale, negotiate the sale price of firearms, and coordinate the date and location for the sale of firearms.

34

c.    Defendants GURLAL SINGH, SAHIBDEEP SINGH, and MAJOR SINGH would transport firearms for purposes of sale.

d.    Defendants GURLAL SINGH, SAHIBDEEP SINGH, and MAJOR SINGH would meet in parking lots and other public places and effectuate the sale of firearms.

D.    OVERT ACTS

33.    In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendants GURLAL SINGH, SAHIBDEEP SINGH, and MAJOR SINGH, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, Overt Acts 21 through 25, as set forth in Count One of this Indictment, which are realleged and incorporated here.

COUNT SEVEN

[18 U.S.C. § 922(o)(1)]

[DEFENDANT GURLAL SINGH]

34.  On or about September 4, 2025, in San Bernadino County, within the Central District of California, defendant GURLAL SINGH, also known as "Gurlal Rudiana" and "Gullu," knowingly possessed a machinegun, as defined in Title 18, United States Code, Section 921(a)(24), and Title 26, United States Code, Section 5845(b), that defendant GURLAL SINGH knew to be a machinegun, namely, a Polymer80, model PF940V2, 9mm Luger caliber pistol, bearing no serial number, equipped with a machinegun conversion device, that was designed and intended, solely and exclusively, for use in converting a weapon into a machinegun.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 1963]

1.   Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 1963, and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count One of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)  Any interest the convicted defendant has acquired or maintained as a result of any such offense;

(b)  Any interest in, security of, claim against, or property or contractual right of any kind affording a source or influence over, any enterprise which the convicted defendant has established, operated, controlled, conducted, or participated in the conduct of, as a result of any such offense;

(c)  Any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection as a result of any such offense; and

(d)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3.   Pursuant to Title 18, United States Code, Section 1963(m), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the

37

property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 981(a)(1)(C), 924(d)(1) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count Two of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any such offense;

(b)  All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been

//

//

39

transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[21 U.S.C. § 853]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Three or Four of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense;

(b)  All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.   Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted shall forfeit substitute property if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold

//

//

to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION FOUR

[21 U.S.C. § 853; 18 U.S.C. § 924; 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, Title 18, United States Code, Section 924, and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Five through Seven of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense;

(b)  All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense;

(c)  All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(d)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3.   Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted, shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the

43

jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/_____
Foreperson

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division

J. MARK CHILDS
Assistant United States Attorney
Chief, Transnational Organized Crime
Section

DECLAN T. CONROY
Assistant United States Attorney
Deputy Chief, Transnational Organized
Crime Section

44